UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

MARRY MORRIS, *et al.*,              )
                                     )
   *Plaintiffs*,          )
                                     )
v.                                   )   Case No. 1:05-cv-358
                                     )
THE CHATTANOOGA HOUSING              )   Judge Mattice
AUTHORITY, *et al.*,                 )
                                     )
   *Defendants*.          )

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for Summary Judgment (Court Doc. 64). Defendants seek summary judgment on Plaintiffs' remaining failure-to-hire claims: (1) Plaintiff Morris's claims of racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, [1] and her claim of racial and age discrimination under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101 to 1004; (2) Plaintiff Love's claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, her claim of racial discrimination under § 1981, and her claim of racial and age discrimination under the THRA; (3) Plaintiff Smith's claim of age discrimination under the ADEA, her claim of racial discrimination under § 1981, and her claim of racial and age discrimination under the THRA; and (4) Plaintiff Woods's claim of age discrimination under the ADEA, her claim of racial discrimination under Title VII and § 1981, and her claim of racial and age discrimination under the THRA. (*See* Court Doc. 47, Memorandum and Order of August 1, 2007.)

---

[1] "It is well settled that § 1981 redresses only racial discrimination." *Ana Leon T. v. Fed. Reserve Bank of Chicago*, 823 F.2d 928, 931 (6th Cir. 1987).

## I.    PRELIMINARY ISSUES

Before the Court turns to Defendants' Motion for Summary Judgment, it must address several preliminary matters.  The Court first **GRANTS** Plaintiffs' Motion for Leave to File an Answering Brief in Excess of 25 Pages [Court Doc. 66].

Second, Plaintiffs move to strike portions of the affidavit of Andrew Lawrence filed in support of Defendants' Motion for Summary Judgment (Court Doc. 69, Mot. Strike).  A motion to strike, pursuant to Federal Rule of Civil Procedure 12(f), is applicable "only to pleadings and is inapplicable to other filings." *Dawson v. City of Kent*, 682 F. Supp. 920 (N.D. Ohio 1988), *affirmed,* 865 F.2d 257 (6th Cir. 1988). Accordingly, the court **DENIES** Plaintiffs' Motion to Strike [Court Doc. 69], and instead treats it as an evidentiary objection.  *See State Mut. Life Assur. Co. of Am. v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979) (stating that a court should disregard inadmissible evidence, not strike that evidence from the record.)

Plaintiffs raise two objections to Mr. Lawrence's Affidavit (Court Doc. 64-11). First, Plaintiffs argue that much of Mr. Lawrence's testimony is hearsay because it relates to what the deponent was told by other declarants.[2]  As they correctly point out, however, Defendants do not offer the third-person declarations recounted in Mr. Lawrence's affidavit to prove the truth of the matters asserted by these declarants. Instead, it is Mr. Lawrence's honest belief in the third-person declarations that is at issue in this case.  *See Braithwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir.

---

[2]        Specifically, Plaintiffs object to the portions of Mr. Lawrence's affidavit that declare that he was told by Defendant Dull that (1) there existed "numerous complaints about Mary Morris," (2) a representative from the United States Department of Housing and Urban Development ("HUD") commented that Francis Love was responsible for filing errors, and (3) Defendant Smith had "past work performance issues."  (Pls.' Mot. Strike 2, 4-5.)  Plaintiffs also object, as hearsay, to Mr. Lawrence's statement that Defendant Smith was not hired because of her performance in her final interview, as was related to him by Mr. Powell and Defendant Wadley.  (*Id.* 4-5.)

2001) (at issue in the pretext analysis is whether a decision maker did "honestly believe" in the given reason for its employment decision.). Accordingly, Mr. Lawrence's affidavit does not contain hearsay. *See* Fed. R. Evid. 801(c).

Plaintiffs next argue that portions of Mr. Lawrence's affidavit are not based on personal knowledge because he could not recount the details underlying his affidavit in a later deposition, and admitted that he did not review the underlying documentation that supported the portions at issue before executing the affidavit. (*See* Court Doc. No. 69-2, Lawrence Dep 60-63.) While Defendants argue that Mr. Lawrence was familiar with the underlying facts at the time of the hiring process (Spring of 2005), it is the time that the affidavit is executed (Fall of 2007) that is controlling. *See* Fed. R. Civ. P. 56(e)(1) (requiring affidavits to be "*made* on personal knowledge . . .") (emphasis added). Accordingly, the Court will disregard the portion of Paragraph 19 addressing Defendant Morris's experience, and the entirety of Paragraph 20 of Mr. Lawrence's Affidavit [Court Doc. 64-11].

Plaintiffs' second evidentiary argument involves Plaintiffs' personnel files and computer assessment scores, which could not be located by Defendants. (Court Doc. 72-7, Lawrence Fed. R. Civ. P. 30(b)(6) Dep. 109-111.) Plaintiffs urge the Court to find that Defendants are guilty of spoliation, and to draw inferences in Plaintiffs' favor regarding the missing documents. "The rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law . . . ." *Beck v. Haik*, 377 F.3d 624, 641 (6th Cir 2004) (citing *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999)). According to Tennessee state courts, "[t]he doctrine of spoliation of evidence permits a court to draw a negative inference against a party that

has *intentionally, and for an improper purpose*, destroyed, mutilated, lost, altered, or concealed evidence." *Bronson v. Umphries*, 138 S.W.3d 844, 854 (Tenn. Ct. App. 2003) (emphasis added). As Plaintiffs have offered no probative evidence suggesting that defendants intentionally lost the documents in question, and did so for an improper purpose, the Court does not accept their argument as to spoliation. *See id.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or by simply " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see*

*Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. FACTS

Defendant Chattanooga Housing Authority ("CHA") provides public, nonprofit housing. (Court Doc. 64-12, Dull Aff. ¶ 3). Defendants Lawrence and Dull are supervisory employees of CHA. (*Id* ¶ 2; Lawrence Aff. ¶ 2.) Defendant Wadley is not an employee of CHA, but is a resident member of the CHA Board of Commissioners, and took part in the hiring decision-making process at issue. (Lawrence Aff. ¶ 37.) Plaintiffs Love, Smith, and Woods are former employees of Defendant CHA who were not rehired after CHA took back and restructured their positions from a private property management Company, H.J. Russell and Company. (Lawrence Aff. 3.) Plaintiff Morris was hired by H.J. Russell and Company, but was not hired by Defendant CHA after it

transitioned her position back in-house.  (*Id.* ¶ 4.)  Plaintiffs are African American, and were over forty years of age at the time of the hiring process at issue.  (Court Doc. 72-6, Morris Dep. ex. 1; Court Doc. 72-9, Love Dep. ex. 1; Court Doc. 72-10, Smith Dep. ex. 1; Court Doc. 72-7, Woods Dep. ex. 1)

The transition of Plaintiffs' positions from H.J. Russell and Company back to CHA occurred in mid-2005.  (*Id.* ¶ 5.)  As part of this transition, CHA restructured its management and customer service positions, and conducted interviews for these positions.  (*Id.* ¶ 6.)  These positions included: Community Operations Manager ("COM"), Community Management Specialist ("CMS"), Community Service Representative ("CSR"), and Customer Information Verification Specialist ("CIVS"). (Dull Aff. ¶ 9.)  All qualified applicants were considered simultaneously for each of the positions for which they applied.  (Lawrence Aff. ¶ 9.)

Plaintiff Morris applied for the COM, CMS, and CSR positions.  (Morris Dep. 33.) Plaintiff Love applied for the COM, CMS, CSR, and positions.  (Love Dep. 127.)  Plaintiff Smith applied for the COM, CMS, and CSR positions.  (Smith Dep. 264-66.)  Plaintiff Woods applied for the CMS, CSR, and CIVS positions.  (Woods Dep. 38, 183.)  Each was granted at least one interview.  None of the Plaintiffs was hired for any of these positions.  Each claims that she was not hired due to her race and age.

Defendants contend that Plaintiff Morris was removed from consideration from any position because of, among other reasons, the "numerous complaints from several CHA residents" she received in her prior position.  (Lawrence Aff. ¶ 4.)  Defendant Dull contends that he received three or four written complaints regarding Plaintiff Morris—the most for any employee.  (Court Doc 72-4, Dull Dep. 38.)

Defendants aver that Plaintiff Love was not considered for any position due to a representation by the United States Department of Housing and Urban Development ("HUD") that she had been responsible for "many of the errors which [it] had found concerning the resident files . . . ." (Lawrence Aff. ¶¶ 24-25.)

Defendants state that Plaintiff Smith was not hired for the CMS position because of her poor final interview. (Lawrence Aff. ¶ 31.) As to the other positions, Defendants cite Plaintiff Smith's past work performance, suspension, and termination while working for H.J. Russell and Company. (*Id.* ¶ 32; Smith Dep. ex. 3.)

Defendants represent that Plaintiff Woods was not hired for the CMS position because of poor interview performance and lack of experience. (Lawrence Aff. ¶ 36.) As to the CSR position, Defendants state that Plaintiff Woods was recommended for this position, but was removed by Defendant Wadley. Regarding the CIVS position, Defendants contend that they lost Plaintiff Woods's application and therefore did not consider her for the position. (Lawrence Fed. R. Civ. P. 30(b)(6) Dep. 176.)

As described in detail below, Plaintiffs challenge these reasons as pretext. Additionally, Mr. Powell, who was then the Executive Director of CHA, made a statement that CHA needed a "younger look" during a Resident Services Coordinator Meeting. (Morris Dep. 168.) Mr. Powell made this comment no later than November of 2003. (*See* Court Doc. No. 64-3, Morris Dep. 88-89, 169-70 (stating that Plaintiff Morris heard this comment when she was a Resident Services Coordinator, which was from September of 2002 to November of 2003)). Defendants did not make the hiring decisions in question until April of 2005. (Lawrence Aff. ¶¶ 13-17.)

## IV.    ANALYSIS

As noted above, Plaintiffs bring failure-to-hire claims under the ADEA (based on age), Title VII (based on race), § 1981 (based on race), and the THRA (based on age and race).  Except for variations in the applicable prima facie case, the Court's analysis of these claims is identical.  Each is addressed under the *McDonnell Douglas/Burdine* burden-shifting analysis described below.  *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973) (creating the burden-shifting analysis for Title VII claims); *Baseball at Trotwood, LLC v. Dayton Prof'l Baseball Club, LLC*, 204 Fed. App'x 528, 536 (6th Cir. 2006) ("Claims of race discrimination under 42 U.S.C. § 1981 are analyzed using the familiar burden-shifting framework set out in *McDonnell Douglas . . . .*"); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003)  (Age discrimination claims under the ADEA are analyzed under the *McDonnell Douglas/Burdine* burden-shifting analysis.); *Shaw v. Danley*, 202 F.3d 270, 2000 WL 64945, at *3 n.2 (6th Cir. Jan. 10, 2000) (The analysis of a THRA claim is identical to the analysis of a related Title VII claim.).  Accordingly, the Court will address all of Plaintiffs' claims simultaneously.

A plaintiff may prove claims of discrimination under the applicable statutes by either direct evidence or circumstantial evidence.  *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).  When a plaintiff presents direct evidence of discrimination, "the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination."  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."

*Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "Consistent with this definition, direct evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (internal citations omitted).

When, however, a plaintiff's claims of discrimination are based on circumstantial evidence, the Court applies the burden-shifting analysis initially described by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McClain v. Nw . Community Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006). That analysis may be summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

The Court will evaluate Plaintiffs' claims under these evidentiary structures.

## A. Individual Liability

Defendants first seek summary judgment as to Plaintiffs claims against Defendants Lawrence, Dull, and Wadley based on the argument that Plaintiffs' causes of action do not provide for individual liability. As to Plaintiffs' Claims under the Title VII and the ADEA, Defendants are correct. "[N]umerous courts . . . have held that supervisors, sued in their individual capacities, are not included within the statutory definition of 'employer' under Title VII and its sister civil rights statutes, and accordingly cannot be held personally liable for discrimination." *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999). However, the "THRA is broader than Title VII in terms of who may be held liable for harassment and discrimination." *Carr v. United Parcel Servs.*, 955 S.W. 2d 832, 835 (Tenn. 1997), *overruled on other grounds by Parker v. Warren County Util. Dist.*, 2 S.W.3d 170 (Tenn. 1999). Although there is generally no direct individual liability under THRA, "an individual who aids, abets, incites, compels, or commands an employer to engage in employment-related discrimination has violated the THRA." *Id.* at 836. Further, "[t]he law is clear that individuals may be held liable for violations of § 1981." *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir. 1986).[3] Accordingly, the Court will **GRANT** Defendants' Motion for Summary Judgment as to Plaintiffs' individual liability claims under Title VII and the ADEA, and will **DENY** Defendants' Motion as to individual liability claims under § 1981 and the THRA.

---

[3] In addition, to establish individual liability under § 1981, Plaintiffs must prove that the Defendants' discrimination was intentional and that they were personally involved in the discriminatory conduct. *General Bldg. Contractors Assoc., Inc. v. Penn.*, 458 U.S. 375, 391 (1982) ("[Section] 1981 can be violated only by intentional discrimination"); *Allen v. Ohio Dep't of Rehabilitation & Corr.*, 128 F. Supp. 2d 483, 495 (S.D. Ohio 2001) ("To establish individual liability, the individual defendant must have been personally involved in the discriminatory action."). In their instant motion, however, Defendants do not assert that Plaintiffs have failed to meet these requirements.

**B.     Direct Evidence**

The only direct evidence of discrimination identified by Plaintiffs is Mr. Powell's statement that CHA needed a "younger look."  (Morris Dep. 168.)  Mr. Powell made this comment no later than November of 2003.  (*See* Morris Dep. 88-89, 169-70 (stating that Plaintiff Morris heard this comment when she was a Resident Services Coordinator, which was from September of 2002 to November of 2003)).  Defendants did not make the hiring decisions in question until April of 2005 (Lawrence Aff. ¶¶ 13-17.) Notwithstanding the fact that this comment is vague, the length of time between when the comment was made and when Defendants made their hiring decisions is too long to "require[] the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions,"  *Jacklyn*, 176 F.3d at 926.  *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1026 (6th Cir. 1993) (holding that an age-related comment made directly to Plaintiff "nearly a year" before the adverse employment action could not be deemed to have influenced adverse employment action.).  Accordingly, Plaintiffs have failed to put forth sufficient direct evidence of discrimination.

**C.     Circumstantial Evidence**

1.     *Prima Facie Case*

a.     Age Discrimination under the ADEA and THRA

The prima facie elements of an ADEA failure-to-hire claim are as follows: (1) the plaintiff was at least forty years old at the time of the alleged discriminatory act; (2) the plaintiff applied and was rejected; (3) the plaintiff was otherwise qualified for the position; and (4) after the plaintiff was rejected, a substantially younger person was hired for the job.  *Walcott v. City of Cleveland*, 123 F. App'x 171, 177-78 (6th Cir. 2005).

Defendants' only argument as to Plaintiffs' prima facie cases is that Plaintiffs were not qualified for the positions for which they applied. In evaluating the qualifications component of Plaintiff's prima facie case, the Court looks only to the applicant's general, objective qualifications. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) (en banc). These include "education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576. "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id.* at 575-76.

While Defendants argue that Plaintiffs were not qualified for the several reasons they were not hired, this argument goes to matters which extend beyond Plaintiffs' prima facie burden. Most circuits refuse to consider a defendant's reasons for refusing to hire an applicant in determining whether, in the context of the prima facie case, the plaintiff was qualified. *See MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1119 (10th Cir. 1991); *Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 54 (3d Cir. 1990); *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1505 (5th Cir. 1988); *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 512 (7th Cir. 1986). Further, district courts within the Sixth Circuit have arrived at the same conclusion. *See*, *e.g.*, *Heck v. Bd. of Trustees, Kenyon College*, 12 F. Supp. 2d 728, 739-40 (S.D. Ohio 1998); *Ligon v. Triangle Pac. Corp.*, 935 F. Supp. 936, 940-41 (M.D. Tenn. 1996).

The rationale behind this rule is sound: While, under *McDonnell Douglas*, a defendant may offer legitimate nondiscriminatory reasons for its decision to terminate a

plaintiff *after* the plaintiff has established his prima facie case, it should not be able to subvert the burden shifting framework set forth in *McDonnell Douglas* by offering the same to attack a plaintiff's prima facie case. *See Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1180 (6th Cir. 1983) ("[I]f we were to hold that a plaintiff's prima facie case fails if his qualifications are challenged by the defendant, we would effectively preclude . . . discrimination suits of this kind."). For this reason, the Court declines to consider Defendants proffered reasons for refusing to hire Plaintiff when evaluating Plaintiff's prima facie case.

        b.    <u>Race Discrimination under Title VII, § 1981, and the THRA</u>

To establish a prima facie case for failure to hire, Plaintiff must show that (1) she is a member of a protected class, (2) he applied and was qualified for a job, (3) despite his qualifications, he was rejected, and (4) after his rejection, the position remained open and other similarly qualified individuals who were not members of the protected class were hired. *McDonnell Douglas*, 411 U.S. at 802; *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002).

Again, Defendants' only argument as to Plaintiffs' prima facie case is that Plaintiffs were not qualified for the reasons they were not hired. As explained above, the Court will not consider this argument in evaluating Plaintiffs' prima facie case.

        2.    *Legitimate Nondiscriminatory Reasons*

Once Plaintiffs have established a prima facie case of gender and racial discrimination, the burden shifts to Defendants "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine*, 450 U.S. at 252-53 (quoting *McDonnell Douglas*, 411 U.S. at 802). As the Court finds that Plaintiffs have

made out a prima facie case based on circumstantial evidence, it will now proceed to analyze Defendants' articulated reasons for failure to hire each of the Plaintiffs.

a.    Plaintiff Morris

Plaintiff Morris applied for the COM, CMS, and CSR positions.  (Morris Dep. 33.) Defendants contend that Plaintiff Morris was removed from consideration from these positions because of, among other reasons, the "numerous complaints from several CHA residents" she received in her prior position.  (Lawrence Aff. ¶ 4.)  Defendants have therefore articulated a legitimate nondiscriminatory reason for not hiring Plaintiff Morris.  *See Doucet v. Univ. of Cincinnati*, No. 06-4118, 2007 WL 2445993, at *6 (6th Cir. Aug. 28, 2007) (finding that students' complaints were a legitimate nondiscriminatory reason not to rehire an assistant professor).

b.    Plaintiff Love

Plaintiff Love applied for the COM, CMS, CSR, and CIVS positions.  (Love Dep. 127.)   Defendants aver that Plaintiff was not considered for these positions due to HUD's representation that Defendant Love had been responsible for "many of the errors which [it] had found concerning the resident files . . . ."  (Lawrence Aff. ¶¶ 24-25.)  Poor prior performance is, of course, a legitimate nondiscriminatory reason for hiring an applicant.  *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001) ("poor job performance" can constitute a legitimate nondiscriminatory reason).

c.    Plaintiff Smith

Plaintiff Smith applied for the COM, CMS, and CSR positions.  (Smith Dep. 264-66.)   Defendants state that Plaintiff Smith was not hired for the CMS position because

of her poor final interview. (Lawrence Aff. ¶ 31.) As to the other positions, Defendants cite Plaintiff Smith's past work performance, suspension, and termination while working for H.J. Russell and Company. (*Id.* ¶ 32; Smith Dep. Ex. 3.) Each is a legitimate nondiscriminatory reason not to hire Plaintiff Smith. *See Heath v. Ohio Turnpike Comm'n,* 85 Fed. App'x 494, 497 (6th Cir. 2004) (finding that poor performance in an interview was a legitimate, nondiscriminatory basis for a refusal to promote); *Majewski*, 274 F.3d at 1116.

### d.    Plaintiff Woods

Plaintiff Woods applied for the CMS, CSR, and CIVS positions. (Woods Dep. 38, 183.) Defendants represent that Plaintiff Woods was not hired for the CMS position because of poor interview performance and lack of experience. (Lawrence Aff. ¶ 36.) Thus, Defendants have established a legitimate nondiscriminatory reason for not hiring Plaintiff Woods for the CMS position. *Heath,* 85 Fed. App'x at 497.

As to the CSR position, Defendants state that Plaintiff Woods was recommended for this position, but was removed by Defendant Wadley. They further argue that "[t]here is no indication in the record that Ms. Wadley was not simply performing the role she had been asked to perform in the hiring process—to represent the CHA residents' interest in the hiring process—in this act." (Court Doc. 76, Defs.' Reply to Pls.' Resp. to Defs.' Mot. Summ. J. 17).

This argument, however, seems to imply that Plaintiff cannot prove that Defendant Wadley acted with racial or ageist animus. As such, it mischaracterizes Defendants' burden to show a legitimate nondiscriminatory reason to rebut Plaintiff Woods's prima facie cases. As Defendants have not borne their burden to show a

legitimate nondiscriminatory reason why Plaintiff Woods was not hired for the CSR position, the Court will **DENY** Defendants' Motion for Summary Judgment as to Plaintiff Woods's claims of failure to hire for the CSR position.

Regarding the CIVS position, Defendants contend that they lost Plaintiff Woods's application and therefore did not consider her for the position. (Lawrence Fed. R. Civ. P. 30(b)(6) Dep. 176.) While the United States Court of Appeals for the Sixth Circuit has not addressed this particular circumstance, the United States Court of Appeals for the Tenth Circuit has held that when a defendant-employer had no record of a plaintiff-applicant's application, and therefore must have lost the application, the employer had a legitimate nondiscriminatory reason for failing to hire the applicant. *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 to 1280 (10th Cir. 1999). While in the instant case, according to Defendants, Plaintiff Woods's application was later found during discovery, *Anaeme* is nonetheless instructive. *See id.* at 1280 ("producing evidence of a nondiscriminatory reason is better than saying nothing at all, even if the evidence is not ultimately persuasive") (citation omitted). As Defendants' proffered reason is legitimate and nondiscriminatory, its plausibility is best evaluated by the Court within its pretext analysis, as set forth below.

      3.    *Pretext*

Because the Court finds that Defendants have articulated legitimate, nondiscriminatory reasons for refusing to hire Plaintiffs,[4] the burden shifts back to the Plaintiffs to show, by a preponderance of the evidence, that the legitimate reasons offered by the Defendant "were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 252-53 (quoting *McDonnell Douglas*, 411 U.S. at

---

[4]      Except for Plaintiff Woods's claims as to the CSR position. *See supra.*

802).    Once Defendants have proffered a legitimate, nondiscriminatory reason for dismissal, their explanation cannot be rejected "unless there is sufficient basis *in the evidence* for doing so.   To allow the jury simply to refuse to believe the employer's explanation would subtly, but inarguably, shift the burden of persuasion from the plaintiff to the defendant."  *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

Plaintiff may meet this burden by offering evidence sufficient to establish that Defendant's proffered reason:  (1) had no basis in fact; (2) did not actually motivate the defendant's decision not to hire the plaintiff; or (3) was insufficient to warrant the refusal to hire the plaintiff.  *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 576 (6th Cir. 2006); *Manzer*, 29 F.3d at 1084.  Regardless of which method Plaintiffs use, they retain the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *Braithwaite*, 258 F.3d at 493 (alteration in original) (internal quotation and citation omitted).

Under the first method, if a plaintiff can show that a defendant's proffered reason for not hiring her is false, that evidence, combined with the plaintiff's prima facie case, "may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).   "[T]he most reasonable inference for jurors to draw, once they disbelieve the defendant's proffered explanation for its actions, will ordinarily be that the real reason the defendant acted as it did was illegal discrimination."  *Kovacevich v. Kent State University*, 224 F.3d 806, 839 (6th Cir. 2000).  To establish pretext in this manner, however, a plaintiff must show

"more than a dispute over the facts" upon which the employer relied in making its employment decision; he must put forth evidence that the defendant did not "honestly believe" in the given reason for its employment decision. *Braithwaite*, 258 F.3d at 494 (6th Cir. 2001); *see also Majewski v. Automatic Date Processing, Inc.*, 274 F.3d 1106, 1117 (6th cir. 2001) ("As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because its shown to be incorrect.").

"To establish pretext under the second method, the plaintiff admits the factual basis underlying the discharge and acknowledges that such conduct *could* motivate the dismissal, but attacks the employer's explanation 'by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant.' " *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (quoting *Manzer*, 29 F.3d at 1084).

Under the third method of demonstrating pretext, the plaintiff must generally show that other applicants not in the protected class were treated more favorably. *See Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003). The plaintiff and the applicant to whom she seeks to compare herself "must be similar in all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The Court will now analyze the pretext argument of each of the Plaintiffs.

a.   <u>Plaintiff Morris</u>

Plaintiff Morris disputes the veracity of Defendants' assertion that she received "numerous complaints from several CHA residents . . . ." (Lawrence Aff. ¶ 4.) In support, she argues that she had been the subject of only one complaint on an issue

she could not control.  (Morris Dep. 118-19.)  However, she admits that she was never called in regarding any complaint made against her (*id.* 118), and therefore may not have had direct knowledge of every complaint made against her.  Further, Defendant Dull's deposition testimony states that he received three or four written complaints regarding Plaintiff Morris—the most for any employee.  (Court Doc 72-4, Dull Dep. 38.)

Plaintiff Morris argues that these complaints were made during her employment with H.J. Russell and Company, and therefore should not have been forwarded to CHA employees.  She further argues that during the hiring process, CHA did not inquire about any other complaints made against other H.J. Russell and Company employees during this period, thereby treating her differently than other applicants.  According to Defendant Dull's uncontroverted deposition testimony, however, he received the complaints against Plaintiff Morris because customers "attempted to follow the process [of lodging complaints with H.J. Russell and Company] and did not get a resolution." (*Id.* 37.)  The Court finds nothing in the record to suggest that this explanation is either false or that it was applied to Plaintiff Morris in a manner different from other former employees of H.J. Russell and Company.  Accordingly, she has failed to establish pretext.  Therefore, the Court will **GRANT** Defendants' Motion for Summary Judgment as to Plaintiff Morris.

b.    <u>Plaintiff Love</u>

Plaintiff Love takes issue with Defendants' assertion that she was not considered for these positions due to HUD's representation that she had been responsible for "many of the errors which [it] had found concerning the resident files . . . ."  (Lawrence Aff. ¶¶ 24-25.)  She argues that according to Ms. Thompson and Defendant Dull, HUD

reporting errors were not considered in the hiring process. (Pls.' Resp. to Defs.' Mot. Summ. J. 37, 40 (citing Court Doc. 76-2, Thompson Dep. 84; Dull Dep. 86.))

Ms. Thompson's deposition, however, establishes only that *she* did not take this information into consideration; it contains no indication as to what factors any of the other persons involved in the hiring process may have considered. (Thompson Dep. 84-85.) Plaintiff Love also calls attention to the fact that, when asked whether HUD reporting errors had any impact on the CSR or CIVS hiring decisions as to her, Defendant Dull replied "No—I don't know. I wasn't part of Ms. Love's interview." (Dull Dep. 86.) Even if the Court were to construe Defendant Dull's ambiguous answer as a definitive "no," the fact still remains that Defendant Dull did not know, and could not have known, all of the factors which were considered in the decision not to hire Plaintiff Love for these positions. (Court Doc. No. 76-8, Dull Dep. 157.) Additionally, while HUD's complaints about reporting errors "seemed to be across the board," the agency "seemed to be focused on Ms. Love . . . ." (Dull Dep. 90-91.) Thus, Plaintiff Love has also failed to establish that she was treated less favorably than other applicants about whom HUD complained

Accordingly, as Plaintiff Love has failed to show "circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant[s]," *Manzer*, 29 F.3d at 1084, her pretext argument fails. The Court will therefore **GRANT** Defendants' Motion for Summary Judgment as to Plaintiff Love.

c.    Plaintiff Smith

Defendants state that Plaintiff Smith was not hired for the CMS position because of her poor final interview. (Lawrence Aff. ¶ 31.) Plaintiff takes issue with Defendants' explanation.

While the Court acknowledges that the quality of an interview is a subjective factor in the hiring process and that "subjective reasons provide ready mechanisms for discrimination," *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 461 (6th Cir. 2004), Plaintiff Smith admits that her CMS interview went poorly. (*See* Court Doc. 64-7, Smith Dep. 51-54.) Further, Defendant Lawrence stated that Plaintiff Smith performed poorly in her final CMS interview. (Lawrence Aff. ¶ 31.) In the interview, she demonstrated that "she did not understand the property management philosophy CHA was trying to create . . . ." (*Id.*) The consistency of the interview participants' opinions somewhat alleviates the Court's concern about the inherent subjectivity of the interview. *See Plumb v. Potter*, 212 Fed. App'x 472, 480 n.3 (6th Cir. 2007) (noting that concerns about the subjectivity of an interview were "lessened" because two interviewers had agreed that an applicant's interview was poor.).

Plaintiff Smith also argues that other applicants with negative interviews were nonetheless hired. She has not demonstrated, however, that these applicants' interviews went as poorly as Defendants claim Plaintiff Smith's did. Defendant Lawrence stated that in the interview, she demonstrated that "she did not understand the property management philosophy CHA was trying to create . . . ." (Lawrence Aff. ¶ 31.) Plaintiff Smith has not produced evidence that a successful applicant had a similar showing in the interview. Without more specific evidence of other applicants' interviews,

the Court will not call into question the veracity of Defendants' interview evaluations. Congress did not intend federal employment discrimination statutes to "diminish traditional management prerogatives." *Burdine*, 450 U.S. at 259. Nor is this Court a "super-personnel department." *Young v. Sabbatine*, 238 F.3d 426, 2000 WL 1888672, *6 (6th Cir. 2000). Accordingly, Plaintiff Smith's pretext argument as to the CMS position fails.

As to the other positions, Defendants cite Plaintiff Smith's past work performance, suspension, and termination while working for H.J. Russell and Company. (*Id.* ¶ 32; Smith Dep. Ex. 3.) Plaintiff Smith does not offer a clear pretext argument as to these positions. She does argue that her assessment scores were higher than average, implying that she was well qualified for the other positions. However, "whether qualifications evidence is sufficient to raise a question of fact as to pretext depends on whether the plaintiff offers other evidence of discrimination." *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626 (6th Cir. 2006). If a plaintiff provides other evidence of discrimination, that evidence, coupled with the qualifications evidence, may be enough to survive summary judgment. *Id.* at 627. However, where there is little or no probative evidence of discrimination, to survive summary judgment, an applicant's qualifications must be "so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id.*

The Court first notes that Plaintiff Smith has not offered any other evidence of discrimination against her. Further, in light of her past performance issues outlined above, the Court cannot say that her overall qualifications are "significantly better than the successful applicant's qualifications . . . ." *Id.* Accordingly, as Plaintiff's pretext

argument fails, the Court will **GRANT** Defendants' Motion for Summary Judgment as to Plaintiff Smith.

d.    <u>Plaintiff Woods</u>

Defendants contend that Plaintiff Woods was not hired for the CMS position because of poor interview performance and lack of experience. (Lawrence Aff. ¶ 36.) According to Defendants, she "could not demonstrate even a basic knowledge of property management issues" and "spent much of the interview staring blankly at the interviewers . . . ." (*Id.*) As to the CIVS position, Defendants represent that they lost Plaintiff Woods's application and therefore did not interview her for this position. (Lawrence Fed. R. Civ. P. 30(b)(6) Dep. 176.) In response, Plaintiff Woods merely asserts that "CHA has offered no reason why she was not considered, qualified, or hired" for the CIVS position. It is Plaintiff's burden, however, to show pretext by pointing to some evidence in the record. *Manzer*, 29 F.3d at 1083. She has not done so regarding the CIVS position.

Plaintiff Woods also takes issue with Defendants' characterization of her interview performance for the CMS position. She cites Ms. Thompson's deposition testimony, which states that Plaintiff Woods did "an outstanding job on the interview." (Thompson Dep. 44.) Defendants contend that Ms. Thompson recalls interviewing Plaintiff Woods more than once, and cannot remember which interview she describes as outstanding. (*Id.*) Therefore, Defendants argue, Ms. Thompson may not be recalling Plaintiff Woods's CMS interview.

Ms. Thompson's records appear to be consistent with Defendants' explanation. They reflect that all four interviewers recommended Plaintiff Woods for hire for the *CSR*

position, not the *CMS* position, suggesting that she did well in *that* interview. (Court Doc. 72-13, Thompson Notes CHA-032-K.) At most, this discrepancy is "a dispute over the facts," and not evidence that Defendants do not "honestly believe" that Plaintiff Woods's CMS interview went poorly. *Braithwaite*, 258 F.3d 494. Accordingly, Plaintiff Woods has not met her burden to show that Defendants' characterization of her CMS interview has no basis in fact. And while, as stated above, the quality of an interview is a subjective factor in the hiring process and that "provide[s] ready mechanisms for discrimination," *Hedrick*, 355 F.3d 444, Defendants have set forth particular substantive deficiencies in Ms. Woods's CMS interview that allay the Court's concerns over subjectivity. (*See* Lawrence Aff. ¶ 36.)

Plaintiff Woods also cites other applicants who were hired despite poor interview performance. But, like Plaintiff Smith, her argument fails because she has not demonstrated that a successful applicant performed as poorly in the interview as did Plaintiff Woods. As Plaintiff Woods is unable to establish pretext as to her CMS and CIVS position claims, the Court will **GRANT** Defendants' Motion for Summary Judgment as to these claims.

## V.    CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [Court Doc. 64] is **DENIED** as to Plaintiff Woods's claims concerning the CSR position, and **GRANTED** as to all other claims by Plaintiff Woods and all claims by Plaintiffs Morris, Love, and Smith. Defendants' Motion for Summary Judgment [Court Doc. 64] is further **GRANTED** as to Plaintiff Woods individual liability claims under Title VII and the ADEA.

Remaining before the Court for trial are Plaintiff Woods's claims as to the CSR position of: age discrimination under the ADEA against Defendant CHA, racial discrimination under Title VII and § 1981 against Defendant CHA, racial and age discrimination under the THRA against Defendant CHA, race discrimination under § 1981 against the individual Defendants, and age and race discrimination under the THRA against the individual Defendants.

SO ORDERED this 28th day of January, 2008.

                                        /s/ Harry S. Mattice, Jr.
                                        HARRY S. MATTICE, JR.
                                        UNITED STATES DISTRICT JUDGE